Adam D. Brumm, Esq.  SB#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA  95616
Telephone: (800) 545-7215, Extension 906
Email:  adam@edendefenders.org

Attorneys for Plaintiff
CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC, a California limited liability company,<br><br>        Plaintiff,<br><br>    vs.<br><br>PEAK MANUFACTURING, INC., a California corporation; PATRICK JAMET, an individual; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, CIVIL PENALTIES AND REMEDIATION**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§1251 et seq.)** |

Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC

("EDEN") hereby brings this civil action pursuant to the Federal Water Pollution Control Act,

also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*.

**INTRODUCTION**

1.     This action is a citizen suit for injunctive relief, declaratory relief, civil penalties,

and remediation against Defendants PEAK MANUFACTURING, INC. and PATRICK JAMET

for current and ongoing violations of the National Pollutant Discharge Elimination System ("NPDES") permit requirements of the CWA.

2.        On or about July 26, 2022, EDEN provided a Notice of Defendants' violations of the CWA to the (1) Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State Water Resources Control Board ("State Board"), and (4) to Defendants, including a copy delivered to the Facility Manager/Owner of Defendant, Peak Manufacturing, Inc., by certified mail at 60 Ellinwood Court, Galt, California 95632 ("the Facility"), as required by 33 U.S.C. § 1365(b)(1)(A), the Clean Water Act ("CWA").

3.        A copy of EDEN's Notice of Intent to Sue is attached hereto as **Exhibit A** and incorporated herein by reference.

4.        More than sixty ("60") days have passed since EDEN's Notice was properly and lawfully served on Defendants, the State Board, and the Regional and National EPA Administrators.  EDEN is informed and believes, and thereupon alleges, that neither the National EPA, nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under Section 309(g) of the CWA, 33 U.S.C. § 1319(g).

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

5.        This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-2202 (declaratory relief), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

6.      The Permit under which this case arises is a federally required permit based upon California state substantive law.  (*Southern California Alliance of Publicly Owned Treatment Works v. U.S. Environmental Protection Agency* (9th Cir. 2017), 853 F.3d 1076; *Dept. of Finance v. Commission on State Mandates,* 1 Cal.5th 749 (2016)).

7.      By its express language, a violation of the State permit constitutes a per se violation of the Federal Clean Water Act.  (California's Industrial General Permit Order 2014-0057 DWQ, NPDES Order No. CAS000001, Section XXI.A).

8.      Venue is proper because Defendants reside in and the events or omissions giving rise to EDEN's claims occurred in this District. 28 U.S.C. §1391(b)(1), (2). Venue is also proper because the Facility's CWA violations have occurred and are occurring within the Eastern District of California. 33 U.S.C. § 1365(c)(1).

**PARTIES**

9.      Plaintiff CENTRAL VALLEY EDEN ENVIRONMENTAL DEFENDERS, LLC ("EDEN") is an environmental membership group organized under the laws of the State of California.

10.      EDEN's organizational purpose is the protection, preservation, and enhancement of the rivers, creeks, streams, lakes and oceans (and their tributaries) located in California.

11.      EDEN's organizational purpose and mission is accomplished through enforcement of the provisions of the Federal Clean Water Act and California's Industrial General Permit, by seeking redress against Industrial Dischargers who violate the Clean Water Act by failure to comply with all standard conditions of the Industrial General Permit.  These standard conditions include, but are not limited to, discharges of polluted stormwater in violation of Federal and California criteria, deficient Stormwater Pollution Prevention Plans and Site Maps,

deficient stormwater monitoring and sampling programs, protocols, and reporting, deficient best management practices, deficient or non-existing exceedance response action reports, deficient or non-existing employee stormwater training programs, deficient or non-existing annual reports, and other informational deficiencies.

12.     EDEN's associational members volunteer their time and money resources to join EDEN's organizational purpose and mission.

13.     EDEN has associational members throughout Northern California.  Some of EDEN's members reside, work, and/or recreate near the Cosumnes River, a tributary of the Sacramento-San Joaquin River Delta Waterways (the "Receiving Waters" for Defendant's storm water run-off), and use those waters and their watersheds for kayaking, camping, cycling, recreation, sports, fishing, swimming, hiking, bird watching, photography, nature walks and scientific study.  Their use and enjoyment of these natural resources have been and continue to be adversely impaired by Defendants' failure to comply with the procedural and substantive requirements of the California Industrial General Permit and Federal Clean Water Act.

14.     EDEN has Article III standing as an association to bring this suit against Defendants, as at least one of EDEN's current members is experiencing an ongoing, concrete and particularized injury that is fairly traceable to Defendants' violations of the Clean Water Act and Industrial General Permit; which can be redressed by a judicial decision granting EDEN the injunctive relief requested herein.

15.     Specifically, the aesthetic and recreational interests of the individual associational members of EDEN with Article III standing have been adversely impacted by Defendants' failure to comply with the procedural and substantive requirements of the California Industrial General Permit and Federal Clean Water Act, as delineated herein.

16.     In addition to harming the aesthetic and recreational interests of EDEN's members with standing in this matter, Defendants' procedural violations of the standard conditions of California's Industrial General Permit have caused informational injuries to EDEN's standing members by depriving these members of their substantive constitutional and statutory rights to obtain information regarding Defendants' compliance with the standard conditions of California's Industrial General Permit as delineated herein; which provisions have been instituted by relevant regulatory agencies for the purposes of protecting the Waters of the United States.

17.     EDEN's associational members who qualify for standing in this matter are current members, and who have been members of EDEN since at least the date that EDEN provided the 60-day Notice of Intent to Sue attached hereto as **Exhibit A** to Defendants.

18.     Defendants' ongoing violations of the General Permit and the Clean Water Act have and will continue to cause irreparable harm to EDEN and its current standing members.

19.     The relief requested herein will redress the ongoing injury in fact to EDEN and its members.

20.     Neither litigation of the claims asserted nor the relief requested in this Complaint will require the participation of any individual members of EDEN.

21.     EDEN is informed and believes, and on such information and belief alleges, that Defendant PEAK MANUFACTURING, INC. ("Peak Manufacturing"), located at 60 Ellinwood Court, in Galt, California, was formed on or about January 1, 2002 as a California corporation.

22.     EDEN is informed and believes, and on such information and belief alleges, that Defendant PATRICK JAMET is the Chief Executive Officer of Peak Manufacturing, according to documents on file with the California Secretary of State.

23.     EDEN is informed and believes, and on such information and belief alleges, that Defendant PATRICK JAMET is also the legal owner of the property located at 60 Ellinwood Court in Galt, California, the property on which Peak Manufacturing operates its business.

## STATUTORY BACKGROUND

24.     Congress declared that the Federal Clean Water Act was designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" through federal and state cooperation to develop and implement "programs for preventing, reducing, or eliminating the pollution of navigable waters and ground waters." 33 U.S.C. §§ 1251(a), 1252(a).

25.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless such discharge is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

26.     Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program. 33 U.S.C. § 1342(p). States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers or through the issuance of a statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(p).

27.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Board to issue NPDES permits including general NPDES permits in California.

General Permit

28.     The State Board elected to issue a statewide general permit for industrial storm water discharges. The State Board originally issued the General Permit on November 19, 1991, and then modified it on September 17, 1992.   The State Board reissued the General Permit on April 17, 1997, and again on April 1, 2014 (the "2015 Permit" or "General Permit"), pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p). The 1997 Permit was in effect between 1997 and June 30, 2015.  The 2015 Permit went into effect on July 1, 2015.  The 2015 Permit maintains or makes more stringent the same requirements as the 1997 Permit.

29.     On November 16, 2018, the State Water Board adopted a revised General Permit (Order No. 2018-XXXX-DWQ, which technically became effective on July 1, 2020).  However, the 2018 Revisions have not officially been finalized or certified by the Clerk of the State Water Board as of the date of this Complaint.

30.     In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit. 33 U.S.C. § 1311(a).

31.     The General Permit contains several prohibitions. Effluent Limitation V(A) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  Discharge Prohibition III(C) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

32.     In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet.  Facilities discharging or

having the potential to discharge storm water associated with industrial activity which have not

obtained an individual NPDES permit must apply for coverage under the State's General Permit

by filing a Notice of Intent to Comply ("NOI").  Dischargers have been required to file NOIs

since March 30, 1992.

33.     Dischargers must develop and implement a Storm Water Pollution Prevention

Plan ("SWPPP"). The SWPPP must describe storm water control facilities and measures that

comply with the BAT and BCT standards.  The objective of the SWPPP requirement is to

identify and evaluate sources of pollutants associated with industrial activities that may affect the

quality of storm water discharges and authorized non-stormwater discharges from the facility,

and to implement best management practices ("BMPs") to reduce or prevent pollutants

associated with industrial activities in storm water discharges and authorized non-storm water

discharges. General Permit § X(C). These BMPs must achieve compliance with the General

Permit's effluent limitations and receiving water limitations, including the BAT and BCT

technology mandates.

34.     To ensure compliance with the General Permit, the SWPPP must be evaluated and

revised as necessary. General Permit, § X(B).

35.     Failure to develop or implement an adequate SWPPP, or to update or revise an

existing SWPPP as required, is a violation of the General Permit. General Permit Fact Sheet

§I(1).

36.     Sections X(D) – X(I) of General Permit set forth the requirements for a SWPPP.

Among other requirements, the SWPPP must include; a pollution prevention team, a site map, a

list of significant materials handled and stored at the site, a description of potential pollutant

sources, an assessment of potential pollutant sources, and a description of a specific mandatory

set of minimum BMPs to be implemented at the facility that will reduce or prevent pollutants in storm water discharges and authorized non-stormwater discharges.

37.     The General Permit further requires dischargers to implement and maintain to the extent feasible, any one or more of the following advanced BMPs necessary to reduce or prevent discharges of pollutants in industrial storm water discharges; exposure minimization BMPs, storm water containment and discharge reduction BMPs, treatment control BMPs, and other advanced BMPs.  General Permit, § X(H)(2).  Failure to implement advanced BMPs as necessary to achieve compliance with either technology or water quality standards is a violation of the General Permit.

38.     The General Permit also requires that the SWPPP include BMP Descriptions and a BMP Summary Table.  General Permit, § X(H)(4), (5).

39.     The General Permit requires dischargers to develop and implement an adequate written Monitoring and Reporting Program. The primary objective of the Monitoring and Reporting Program is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations.

40.     As part of their monitoring program, Dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented.

41.     Section XI(B) of the General Permit requires that Dischargers collect and analyze storm water samples from two qualifying storm events ("QSEs") during the first half of each reporting year (July 1 to December 31), and two QSEs during the second half of each reporting

year (January 1 to June 30), and that the samples be collected from all outfalls identified in the Facility SWPPP.

42.     A QSE is a precipitation event that produces a discharge for at least one drainage area and is preceded by 48 hours with no discharge from any drainage area.  General Permit, §XI(B)(2).

43.     Once the storm water samples have been collected, the General Permit requires that the Discharger deliver the samples to a qualified laboratory for analysis within 48 hours of collection (General Permit, Attachment H) and upload into SMARTS the resulting laboratory reports within 30 days from receipt of the report.  General Permit, § XI(B)(4).

44.     Facilities are also required to make monthly visual observations of storm water discharges. The visual observations must represent the quality and quantity of the facility's storm water discharges from the storm event.  General Permit, § XI(A).

45.     The General Permit requires operators to conduct an Annual Comprehensive Facility Compliance Evaluation ("Annual Evaluation") that evaluates the effectiveness of current BMPs and the need for additional BMPs based on visual observations and sampling and analysis results. General Permit, § XV.

46.     Under the General Permit, facilities must analyze storm water samples for pH, oil & grease, and total suspended solids, as well as additional parameters indicated in the Permit by facility type and those parameters identified by the Discharger on a facility-specific basis that serve as indicators of the presence of all industrial pollutants identified in the pollutant source assessment.  General Permit, § XI(B)(6)(c).

47.     Section XVI(A) of the General Permit requires that all Dischargers must certify and submit via SMARTS an Annual Report no later than July 15th, following each reporting year, using the standardized format and checklists in SMARTS.

Citizen Suit Provision of the CWA

48.     Under the CWA, any citizen may commence a civil action against any person who is alleged to be in violation of an effluent standard or limitation under the CWA or an Order issued by a State with respect to such a standard or limitation. 33 U.S.C. §1365(a)(1). No action may be commenced prior to sixty ("60") days after the plaintiff has given notice of the alleged violation (1) to the Administrator of the EPA, (2) to the State in which the alleged violation occurs, and (3) to any alleged violator of the standard, limitation, or order. 33 U.S.C. § 1365(b)(1)(A).  By including a citizen suit provision in the CWA, Congress ensured that the purposes and requirements of the CWA would be enforced either by the government or by concerned citizens.

49.     In furtherance of the water preservation goals established by the CWA, the citizen suit provision confirms the District Court's jurisdiction to apply any appropriate civil penalties under section 1319(d).  33 U.S.C. § 1365(a). Section 1319(d) declares that any person who violates any permit condition or limitation implementing any of such sections in an NPDES permit shall be subject to a civil penalty not to exceed $46,192.00 per day for each violation occurring before November 2, 2015, and $56,460.00 per day per violations occurring after November 2, 2015.   33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; General Permit, XXI.Q.1.

50.     Violations of the General Permit, including those detailed below, constitute violations of the CWA and are subject to civil penalties. General Permit § XXI; 33 U.S.C. §§ 1319(d), 1342; 40 C.F.R. §§ 19.1-19.4.

## FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS

51.     Defendant Peak Manufacturing is a sheet metal fabrication facility.  EDEN is informed and believes that the Facility falls under standard industrial classification ("SIC") code 3444, covering establishments primarily engaged in manufacturing or fabricating sheet metal.

52.     EDEN is informed and believes that Peak Manufacturing stores copious amounts of scrap metal, used tires, parts, old and unusable or broken equipment, and industrial materials outdoors.  These materials are exposed to storm water, eroded by wind, and otherwise contaminate the surrounding watershed.

53.     Based on EDEN's investigation, including perimeter site visits, a review of aerial photography, Federal, State, and local regulatory agency mapping tools, and also EDEN's information and belief, storm water is collected and discharged via surface flow on the Facility's impervious and partially impervious ground surfaces, reaching one or more City of Galt MS4 system located adjacent to Defendant's facility on Ellinwood Court.

54.     The City of Galt's MS4 inlets discharge via Deadman Gulch to the lower Cosumnes River, a navigable Waterway of the United States and a tributary of the Sacramento-San Joaquin Delta waterways.

55.     Plaintiff is informed and believes, and thereupon alleges that the storm water flows over the surface of the Facility where industrial activities occur and areas where airborne materials associated with the industrial processes at the facility may settle onto the ground. Plaintiff is informed and believes, and thereupon alleges that storm water flowing over these areas collects suspended sediment, dirt, heavy metals, and other pollutants as it flows towards the storm water channels.

### Operating Without Industrial General Permit (NPDES) Coverage

56.     Defendants have been operating the Peak Manufacturing facility at its current location since at least January 1, 2002.

57.     Attachment A to the Industrial General Permit (attached hereto as **Exhibit B**) lists the specific industrial facilities which are required to obtain General Permit coverage, including all facilities with SIC Codes 20XX through 39XX.

58.     Defendant Peak Manufacturing's SIC Code is 3444, as it is a metal fabrication facility.  (See Statement of Information for Peak Manufacturing, Inc. filed with the California Secretary of State on December 28, 2016, attached hereto as **Exhibit C**).

59.     As of the date of this Complaint, Defendants have failed to obtain NPDES coverage through California's Industrial General Permit.

60.     Based on the foregoing, Plaintiff is informed and believes, and thereon alleges, that between at least October 1, 2017, and the present, Defendants have been operating Peak Manufacturing without obtaining NPDES coverage under the General Permit.

61.     Thus, Defendants have been discharging polluted storm water into the lower Cosumnes River without an NPDES Permit since at least October 1, 2017, and have also failed to take action to prevent or minimize such discharges in violation of the CWA.

62.     Plaintiff is informed and believes, and thereupon alleges, that these violations are ongoing and continuous.

**Non-Existent SWPPP and Site Map**

63.     On information and belief, Plaintiff alleges that Defendants have been operating the Facility without a SWPPP and Site Map since at least October 1, 2017.

64.     Information available to EDEN indicates that as a result of these practices, storm water containing excessive pollutants from Defendants' industrial operations is being discharged during rain events into the lower Cosumnes River.

65.     Information available to Plaintiff indicates that Defendants have not fulfilled the requirements set forth in the General Permit for discharges from the Facility due to its continued discharge of contaminated storm water in violation of the CWA.

66.     Plaintiff is informed and believes, and thereupon alleges, that these violations are ongoing and continuous.

**Failure to Implement a Monitoring and Reporting Program**

67.     On information and belief, EDEN alleges that since at least October 1, 2017, Defendants have operated the Peak Manufacturing facility without implementing a storm water monitoring program, and have failed to collect and analyze storm water samples.

68.     On information and belief, EDEN alleges that since at least October 1, 2017, Defendants have failed to conduct monthly visual observations and sampling at the Facility.

69.     Information available to EDEN indicates that as a result of these practices, storm water containing excessive pollutants from Defendants' industrial operations (including sediment, iron, zinc, aluminum, copper and chemical oxygen demand) is being discharged during rain events into the lower Cosumnes River, in violation of the CWA.

70.     Plaintiff is informed and believes, and thereupon alleges, that these violations are ongoing and continuous.

**Failure to Implement BAT/BCT and BMPs**

71.     EDEN is informed and believes that Defendants have failed to identify and implement Best Management Practices ("BMPs") at the Peak Manufacturing facility that comply

with best conventional treatment (BCT) for conventional pollutants, and best available technology (BAT) for toxic and non-conventional pollutants.

72.     Information available to EDEN indicates that as a result of these practices, storm water containing excessive pollutants from Defendants' industrial operations (including sediment, iron, zinc, aluminum, copper and chemical oxygen demand) is being discharged during rain events into the lower Cosumnes River, in violation of the CWA.

73.     Plaintiff is informed and believes, and thereupon alleges, that these violations are ongoing and continuous.

**Discharges of Contaminated Storm Water**

74.      Information available to EDEN indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges.

75.     Due to the nature of the operations at the Peak Manufacturing facility, coupled with the lack of proper BMP implementation and unauthorized non-storm water discharges during every significant local rain event since October 1, 2017, Defendants have discharged into the lower Cosumnes River, storm water containing excessive levels of pollutants specific to their operation, in violation of the CWA.

76.     Plaintiff is informed and believes, and thereupon alleges, that these violations are ongoing and continuous.


**FIRST CAUSE OF ACTION**
**Failure to Apply for NDPES Coverage**
**Violation of the Clean Water Act, 33 U.S.C. §§ 1311, 1342)**

77.     Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

78.     The General Permit contains, in Attachment A, a list of Standard Industrial Classification (SIC) Codes that indicate the types of facilities which must apply for coverage under the General Permit.

79.     Defendant Peak Manufacturing's facility SIC Code of 3444 (reflecting its primary operations as a metal fabrication facility) is included among those industries which must apply for General Permit coverage.

80.     Defendants have failed to date to obtain General Permit coverage at the Peak Manufacturing facility.

81.     Since at least October 1, 2017, each day that Defendants have failed to apply for General Permit coverage is a separate and distinct violation of the CWA, against all Defendants.

**SECOND CAUSE OF ACTION**
**Failure to Prepare, Implement, Review and Update**
**A Storm Water Pollution Prevention Plan**
**(Violation of Clean Water Act, 33 U.S.C. §§ 1311, 1342)**

82.     Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

83.     Dischargers of storm water associated with industrial activity must develop and implement an adequate Storm Water Pollution Prevention Plan (SWPPP) to prevent the discharge of industrial pollutants from entering Waters of the United States.

84.     Defendants have failed to develop and implement a SWPPP for the Facility.

85.     Since October 1, 2017, each day that Defendants have failed to develop, implement, and update a SWPPP for the Facility is a separate and distinct violation of the CWA, against all Defendants.

**THIRD CAUSE OF ACTION**
**Failure to Develop and Implement a**
**Monitoring and Reporting Program**
**(Violation of the Clean Water Act, 33 U.S.C. §§ 1311, 1342)**

86.     As outlined herein, Defendants have failed to develop and implement a

monitoring and reporting program for the Peak Manufacturing facility.

87.     Since at least October 1, 2017, each day that Defendants have failed to develop

and implement a monitoring and reporting program for its Facility is a separate and distinct

violation of the CWA, against all Defendants.

**FOURTH CAUSE OF ACTION**
**Failure to Implement the Best Available and**
**Best Conventional Treatment Technologies**
**(Violation of the Clean Water Act, 33 U.S.C. §§ 1311, 1342)**

88.     Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set

forth herein.

89.     Industrial dischargers are required to reduce or prevent pollutants in their storm

water discharges through implementation of BAT for toxic and nonconventional pollutants and

BCT for conventional pollutants.

90.     Defendants have failed to implement BAT and BCT at the Facility for discharges

of iron, sediment, zinc, aluminum, chemical oxygen demand, copper, and other potentially

unmonitored pollutants.

91.     Since at least October 1, 2017, each day that Defendants have failed to develop

and implement BAT and BCT is a separate and distinct violation of the CWA, against all

Defendants.

**FIFTH CAUSE OF ACTION**
**Discharges of Contaminated Storm Water**
**in Violation of the Clean Water Act**
**(33 U.S.C. §§ 1311, 1342)**

92.    Plaintiff re-alleges and incorporates all the preceding paragraphs as if fully set forth herein.

93.    Plaintiff is informed and believes, and thereupon alleges, that since at least October 1, 2017, Defendants have been discharging polluted storm water from the Facility.

94.    During every rain event, storm water flows freely over exposed materials, waste products, and other accumulated pollutants at the facility, becoming contaminated with iron, sediment, zinc, aluminum, chemical oxygen demand, copper, and other potentially unmonitored pollutants at levels above applicable water quality standards. The storm water then flows untreated into the lower Cosumnes River.

95.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are adversely affecting human health and the environment.

96.    Since at least October 1, 2017, every day that Defendants have discharged and continue to discharge polluted storm water from the Peak Manufacturing facility is a separate and distinct violation of the CWA, against all Defendants.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1.    Declare Defendants to have violated and to be in violation of the CWA;

2.    Issue an injunction ordering Defendants to immediately operate the Facility in compliance with the NPDES permitting requirements contained in the General Permit and the CWA;

3.  Enjoin Defendants from discharging pollutants from the Peak Manufacturing facility to the surface waters surrounding the Facility until such time as Defendants have developed and implemented an adequate SWPPP and implemented appropriate BMPs;

4.  Order Defendants to pay civil penalties of $56,460.00 per day/per violation for each violation of the Act pursuant to 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1, 19.2-19.4;

5.  Order Defendants to take appropriate actions to restore the quality of United States waters impaired by the activities at the Peak Manufacturing Facility;

6.  Order Defendants to pay EDEN's reasonable attorneys' fees and costs (including expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law;

7.  Award Plaintiff additional attorney fees under California Code of Civil Procedure §1021.5, to the extent that Plaintiff's Notice of Intent to Sue directed to Defendants was the catalyst for Defendants' voluntary corrective action or cessation of the violations included in Plaintiff's Notice, provided that Defendants undertook any such corrective action after receiving Plaintiff's Notice, and;

8.  Award such other and further relief as may be just and proper.


Dated:  September 27, 2022                    Respectfully,


By: ___/S/ Adam D. Brumm_____
    Adam D. Brumm
    Attorney for Plaintiff